# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

STANLEY F. FROMPOVICZ, JR., CAROL          )
FRAMPOVICZ                                 )
                                           )
                                           )
            v.                             )       NO. 1:CV00-1750
                                           )
                                           )
UNION TOWNSHIP                             )
UNION TOWNSHIP BOARD OF SUPERVISORS        )       **FILED**
SWANGER, KINDT, CARBAUGH, TSHUDY,          )       HARRISBURG, PA
JONES and DAVID MILLER/ASSOCIATES,         )
INC.                                       )       JAN 2 5 2001
                                           )
                                                   MARY E. D'ANDREA, CLERK

---

## PLAINTIFFS' RESPONSE TO THE UNION TOWNSHIP DEFENDANTS' MOTION TO DISMISS

AND NOW, Plaintiffs, by and through their counsel of record, Teri B. Himebaugh, Esquire and Tom Scott, Esquire do hereby respond to the Union Township Defendants' Motion to Dismiss.

1.  Denied in part, admitted in part. Please see Plaintiff's Memorandum of Law appended hereto.

2.  Admitted

3.  Admitted

4.  Denied

5.  Denied as stated.

6.    Denied

7.    Denied

8.    Denied

9.    Denied

10.   Denied

11.   Denied

12.   Denied

13.   Denied

14.   Denied

15.   Denied

In further support of Plaintiff's Response, Plaintiffs incorporate by reference herein their Memorandum of Law.

WHEREFORE, the Plaintiffs respectfully request that this Honorable Court deny Defendants' Motion to Dismiss Plaintiff's Complaint and permit this matter to proceed.

Respectfully submitted,

Teri B. Himebaugh, Esq.
PA ID 53603

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

STANLEY F. FROMPOVICZ, JR., CAROL        )
FRAMPOVICZ                               )
                                         )
                                         )
                    v.                   )    NO. 1:CV00-1750
                                         )
                                         )
UNION TOWNSHIP                           )
UNION TOWNSHIP BOARD OF SUPERVISORS      )
SWANGER, KINDT, CARBAUGH, TSHUDY,        )
JONES and DAVID MILLER/ASSOCIATES,       )
INC.                                     )

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR RESPONSE
TO THE UNION TOWNSHIP DEFENDANTS' MOTION TO DISMISS**

AND NOW, Plaintiffs, by and through their counsel of record, Teri B. Himebaugh, Esquire and Tom Scott, Esquire hereby submit the following Memorandum of Law in Support of their Response to the Union Township Defendants' Motion to Dismiss.

## I.    STATEMENT OF THE CASE

On or about April 12, 1997 Plaintiffs purchased a property located within Union Township. At the time of its purchase, the property has been zoned under Union Township Zoning Ordinance 402.1 as Agricultural, which included a permitted use of intensive animal husbandry (pig farming).

There were two bidders at the sale: Plaintiffs and Farmer Boy Ag. At the time of sale, Defendants were aware that Plaintiffs' intended to use the property to collect and sell spring water. Farmer Boy Ag's intended use of the property, had they been the high bid, was a pig farm.

In August, 1997 Zoning Officer Tshudy advised the Plaintiffs that the water operation was an acceptable use of the property under the applicable zoning code and that they may proceed. [1] Subsequently, on March 4, 1998 Plaintiffs were advised that the water operation was not in fact an approved use of the property and they would have to apply for a zoning variance in order to use the property for the proposed water operation. In June 1998 Plaintiffs request for a variance related to the water operation was denied.

Plaintiffs thereupon advised Zoning Officer Jones that they intended to operate a pig farm on the property instead of the water operation. At that time Mr. Jones verbally confirmed to the Plaintiffs that the property was already zoned to permit high intensity pig farming, as contemplated by the Plaintiffs, under § 402.1(c) of the Union Township Zoning Ordinances. (Exhibit A).

---

[1]    Mr. Tshudy subsequently left the Zoning Office. He was thereupon employed by David Miller/Associates. Mr. Jones was hired to replace him.

In June 1998, out of caution and because there would be a change of use (the property had previously been used for crops/trees), Plaintiffs applied for a *zoning* permit (<u>not</u> a *building* permit) to confirm what they had been told by Zoning Officer Jones: that the property could be used for high intensity pig farming.

On June 24, 1998 Mr. Jones advised the Plaintiffs that they would need to submit E&S, building, manure, subdivision and other plans before a *building* permit would be issued. At a June 30, 1998 meeting with Mr. Jones, Plaintiffs explained that they were <u>not</u> seeking a *building* permit at that time, but rather only a *zoning* permit confirming that the property was approved for use as a high intensity pig farm. Plaintiffs explained that they wanted written assurance of the properties' approved use before they invested the significant additional sums of money that would be necessary for preparation of the multitude of plans Defendants indicated they would ultimately require in order for Plaintiffs to obtain a building permit.

In August 1998 Plaintiffs repeated their request for a

*zoning* permit to Mr. Tshudy, who had become re-employed by the Township as Zoning Officer. [2] Mr. Tshudy reassured the Plaintiffs that the pig farm operation that they proposed was in fact an approved use, however, he agreed to discuss the matter with the Township Solicitor.

The Defendants subsequently prepared a letter to the Plaintiffs confirming that the Plaintiffs' property was approved for use as a high intensity pig farm. The letter went on to specifically state that the various above referenced plans would have to be submitted before a *building* permit would be issued. (Exhibit B). This was the exact type of confirmation of use that Defendants knew that Plaintiffs were seeking before committing themselves financially further and seeking a building permit.

Defendants intentionally, however, never sent this letter to the Plaintiffs. Had Plaintiffs received this letter, they could have immediately gone forward and obtained the plans required for submission in order for them to ultimately obtain the building permit. Defendants knew that not having this confirmation would delay the Plaintiffs long enough for the Defendants to change the zoning laws

---

[2]    Mr. Tshudy also remained, however, employed by David Miller/Associates during this same period of time.

sufficiently to hinder, frustrate and ultimately prevent the Plaintiffs from ever using their property as intended.

On September 30, 1998, Plaintiffs' zoning application was denied because Plaintiffs had not filed all the required plans to obtain a *building* permit as of that date.

On November 11, 1998 at a Township meeting, a six-month moratorium on development of intensive animal husbandry within the Township was passed. Plaintiffs reasonably, could take no further action by filing additional applications during that time as it would have done them no good due to the moratorium. On April 14, 1999 Ordinance No. 75, 1999 was enacted by the Union Township Board of Supervisors wherein Township Ordinances were amended to specifically define intensive animal husbandry to include pig farming and to eliminate intensive animal husbandry as a permitted use, except upon the granting of a "special exception".

Meanwhile, Plaintiffs and Kenneth and Lillian Michaels, the owners of an adjacent property, filed an application for a special zoning amendment. While the property in question had been officially zoned OSTC, it had been operating, with full knowledge of the Defendants as a commercial sawmill for over 25 years prior to the Plaintiffs' request. The Plaintiffs and the Michaels applied for the special zoning

amendment to officially recognize the property zoning to reflect its' actual use during the prior 25 years.

At the Township meeting held on August 9, 2000, Plaintiff's Applications related to the Pig Farm and Sawmill Rezoning request related to the Sawmill were tabled. When questioned why Plaintiffs' applications were not being expeditiously processed and granted as other businesses' applications were, it was specifically and publicly indicated that the reason Plaintiffs were being treated differently, was because Defendants had an acrimonious history with the Plaintiffs and held personal animosity toward them. The Frompovich's were specifically identified.

When the sawmill application was finally heard at a September 2000 meeting, the request was summarily denied by the Defendants on the basis that there would be no "spot rezoning" applications granted within the Township. Plaintiffs aver that, not withstanding the above, the Defendants permitted spot rezoning requests made by other similarly situated landholders.

Furthermore, under the newly revised provisions of Ordinance No. 75, Plaintiffs would now be required to obtain a special exception in order to get the pig farm properly zoned for its intended use. Given that Defendants have forcefully asserted that they would not consider "spot

rezoning", such a special exception would clearly be denied. It would be futile therefore to require Plaintiff to seek a special exception.

Plaintiffs aver that they have been denied their due process rights in that they have been treated in an arbitrary and capricious manner by the Defendants. Plaintiffs have asserted that similarly situated landholders have been treated differently than Plaintiffs.

Plaintiffs aver that at all times material other similarly situated and zoned property owners requested and routinely received from Defendants zoning permits (confirmation of use), without the prior issuance of a building permit, in order to confirm the accepted use of their property.

Furthermore, Defendants did not as vigorously or strictly enforce or seek enforcement of the zoning code on other similarly situated and sometimes significantly larger projects with more potential environmental impact than Plaintiffs' project. For example, landholders within the township including but not limited to I.C. Farms/George Christiansen were given a zoning permit/written confirmation of the accepted use of their property for high intensity pig farming without being first required to file an E&S plan, a manure plan, a development plan etc. Confirmation of accepted

use was based in part on evaluations done by David Miller/Associates.

Plaintiff's Rezoning request was also similar in nature to requests made by other similarly situated property owners within the Township, including but not limited to properties owned by David Carbaugh, Richard Sidle, Ellwood Hoover and Lebanon Valley Honda. Those Rezoning Requests were promptly processed and granted by the Defendants when Plaintiffs' Rezoning request was not.

As a direct and proximate result of Defendants acts, Plaintiffs have been injured. They have suffered monetary damages and they have been denied the use of their properties. They have also incurred legal fees and other such costs and expenses. Furthermore, they have suffered significant emotional distress, pain and anxiety.

## II.  LEGAL STANDARD

The law provides that a civil rights suit should not be dismissed at the pleading stage unless it appears to a certainty that the Plaintiffs are entitled to *no* relief under *any* state of facts which could be proved in support of their claim. 42 USCA 1981; <u>Conley v. Gibson</u>, 355 U.S. 41 (1957); <u>Cubellis v. Costar</u>, 65 F.R.D. 49; <u>Husbands v. Com. of Pa.</u>,

359 F. Supp 925; Ammlunmg v. City of Chester, 355 F.Supp.
1300. The burden to prove this is on the moving party. Liem
Duc Nguyen v. U.S. Catholic Conference, 548 F. Supp. 1333.

Averments of the complaint must be accepted as true and
the motion will be denied if proof of *any* of the averments
would entitle Plaintiffs to recover. DiVito v. Greenstein, 55
F.R.D. 58; Supchak v. U.S., 365 F.2d 1269. Plaintiffs are
entitled to the benefit of all reasonable doubts and
inferences, which might arise in connection with the motion.
Braden v. Univ. of Pittsburgh, 552 F.2d 948. Furthermore,
civil rights complaints are to be liberally read, and
litigation, where possible, should be decided on the merits.
Downs v. Dept. of Public Welfare, 368 F. Supp. 454;
Richardson v. Penn. Dept. of Health, 561 F.2d 489.

Civil rights complaints comply with the notice
requirement if they allege the specific conduct violating the
Plaintiffs' rights, the time and place of that conduct and
the identity of the responding officials. Colburn v. Upper
Darby Township, 838 F.2d 663, 666 (3rd Cir. 1988).
Plaintiffs' complaint comports to these requirements.

Furthermore, assuming arguendo that the Court finds
Plaintiffs' initial pleadings insufficiently specific,
dismissal of the action with prejudice is not proper. Rather,
the Court should grant Plaintiffs the right to amend their

complaint. <u>Borelli v. City of Reading</u>, 532 F.2d 950.
Dismissal with prejudice is a harsh sanction to be resorted
to only in extreme cases and when less drastic alternatives
have been explored. <u>Jones v. Smith</u>, 99 F.R.D. 4; Fed.Rules
Civ. Proc 37(b).


### III. LEGAL ARGUMENT

**A.**   **<u>Plaintiffs' state claims and causes of action against the Union Township Defendants upon which relief can be granted.</u>**

**1.**   **<u>Denial of Substantive and Procedural Due Process</u>**

The Third Circuit Court of Appeals held in <u>DeBlasio v.
Zoning Board of Adjustment</u>, 53 F.3d 592 (3rd Cir. 1995),
that a landowning plaintiff whose use or enjoyment of the
property has been limited by a governmental decision
alleged to be based on political or personal reasons
unrelated to the merits of the proposed use of the
property, has established possession of a property interest
worthy of substantive due process protection. <u>See also,</u>
<u>Woodwind Estates, Ltd. V. Gretkowski</u>, 205 F.3d 118, 123 (3d
Cir. 2000).

In the case at bar, Plaintiffs are the owners of the
property at issue with regard to the Pig Farm operation.
They also hold the lease on the Sawmill property owned by

the Michaels. Plaintiffs have also alleged sufficient facts to establish for purposes of this motion that the actions taken by the government officials were arbitrary and capricious. Plaintiffs' complaint lists examples of only a few similarly situated landholders who were treated more favorably than the Plaintiffs.

Plaintiffs also allege that a material issue of fact exists which precludes entry of judgment against the Plaintiffs. Plaintiffs allege that the Ordinance was enacted with the specific purpose to hinder, frustrate and deny Plaintiffs due process. Defendants allege that the Ordinance was passed because it was in the Townships' best interest to limit intensive animal husbandry to certain areas which will cause the "least interference and interruption of the surrounding Township residents and businesses". Whether the Township's asserted reason for enacting the amended Ordinance is credible is a matter for the jury to determine.

Plaintiff has also alleged sufficient facts from which a jury could infer that the Defendants actions were tainted by improper motive in that Plaintiffs were singled out due to Defendants personal animosity toward them. <u>Bello v. Walker</u>, 840 F.2d 1124, 1129 (3d Cir. 1980). Thus,

Plaintiffs have set forth a substantive due process claim, which would entitle the Plaintiffs to relief.

To establish a violation of the right to procedural due process, the Plaintiffs must prove that a person acting under color of state law deprived them of a protected property interest and that the state procedure for challenging the deprivation does not satisfy the requirements of due process. See DeBlasio,  53 F.3d at 597 (citing Midnight Sessions. Ltd.City of Philadelphia 94, F.2d 667, 680 (3d Cir. 1991)).

As set forth above, Plaintiffs as the owner of the pig farm property and the lessor of the Sawmill property have a protected property interest at stake. Plaintiffs also set forth sufficient facts to satisfy the second prong of a procedural due process claim.

A state provides constitutionally adequate procedural due process when it provides reasonable and adequate remedies to rectify a legal error by a local administrative body. See DeBlasio 53 F.3d at 597 (citing  Bello v. Walker, 840 F.2d 1124, 1128 (3d Cir. 1988)).

The situation that the Plaintiffs found themselves in, however, did not afford them a "full judicial mechanism with which to challenge the administrative decision." Bello v. Walker, 840 F.2d 1124, 1128 (3d Cir. 1988).

As set forth above, the Defendants intentionally delayed issuing the Plaintiffs a use zoning permit related to the pig farm in order to permit the Defendants time to conduct a legislative "end run" around Plaintiff by amending the zoning laws. Prior to the Zoning Ordinance being amended the Plaintiffs had an available judicial mechanism to appeal to the Court of Common Pleas the denial of the zoning permit, as they initially did the after the September 30, 1998 denial of the building permit. [3]

However, once the Zoning Ordinance was amended, the only way to obtain a permit was to seek a special exception. As argued above, it would have been fruitless to require Plaintiffs to apply for a special exception given the Defendants' clearly stated position against "spot zoning" (at least as applied to the Plaintiffs).

Due process requires that Plaintiff be afforded a neutral Board decide zoning issues. Rogin v. Bensalem Township, 616 F.2d 680, 694 (3rd Cir. 1980). Defendants could not sit as a neutral arbitrator with regard to the

---

[3]    While Plaintiffs zoning counsel repeatedly raised the due process related facts and issues before the Court, the sole issue decided by the Court of Common Pleas was the interpretation to be given to Section 702 concerning what a "use" permit was and when it should be requested.

decision on a special exception due to their animosity toward the Plaintiffs.

Nor did Plaintiffs have adequate post-deprivation remedies available to them other than the instant suit. Under Section 909.1 of the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, added by § 87 of the Act of December 21, 1988, P.L. 1329 (Code), jurisdiction of the Zoning Board is limited to hearing and deciding appeals related to the Code only: denial of a permit, issuance of a cease and desist order, refusal to register any non-conforming use, etc. APT Pittsburgh Limited Partnership v. MeKees Rocks Borough Zoning Hearing Board, C.C.P. Allegheny County No. S.A. 534-97, 5/15/98. The wording of the sections "to hear and decide", implies only the power to render decisions, limited to those specific questions consigned to the adjuicatory powers of that body by statute." In Re Leopardi, 516 Pa. 115, 532 A.2d 311, 313 (1987); Paulson v. Zoning Hearing Board of Wallace Township, 712 A.2d 785 (Pa. Cmwlth, 1998).

The civil claims brought in the instant action are clearly outside the Code perameters and therefore outside the Zoning Board's jurisdiction. These claims therefore could not have been heard and decided by the Zoning Board.

Furthermore, the Court of Common Pleas sitting in its appellate capacity, hearing a zoning appeal would not have jurisdiction to hear or decide for the first time the civil rights claims presented herein.

Thus, Plaintiffs were without adequate judicial remedy to pursue any other post deprivation remedies other than the instant suit. Thus, Plaintiffs have set forth sufficient facts in support of their procedural due process claims to withstand the instant Motion by Defendants to Dismiss.

## 2.  **Conspiracy to violate Plaintiffs rights to due process**

Plaintiffs have set forth sufficient facts to support a claim for conspiracy. In Hampton v. Hanrahan, 600 F. 2d 600, 620-24 (7th Cir. 1979), the 7th Circuit Court defined a civil rights conspiracy as follows:

> A civil conspiracy is a "combination of two or more persons acting in concert to commit an individual act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to "inflict a wrong against or injury upon another," and "an overt act that results in damage" in order to prove the existence of a civil conspiracy, a plaintiff is not required to provide direct evidence of the agreement between the conspirators; "[c] circumstantial evidence may provide adequate proof of conspiracy "...absent the testimony of a co-conspirator, it is unlikely that direct evidence of a conspiratorial agreement will exist thus, the question whether an agreement exists should not be taken from the jury in a civil

conspiracy case so long as there is a possibility that the jury can "infer from the circumstances [that the alleged conspirators] had a "meeting of the minds" and thus reached an understanding "to achieve the conspiracy's objectives...".

A plaintiff seeking redress need not prove that each participant in the conspiracy knew the "exact limits of the illegal plan or the identity of all participants therein"... an express agreement among all the conspirators is not a necessary element of a civil conspiracy.  The participants in the conspiracy must share the general conspiratorial objective, but they need not know all the details of the plan designed to achieve the objective or possess the same motives for designing the intended conspiratorial result.  To demonstrate the existence of a conspiratorial agreement, it simply must be shown that there was "a single plan, the essential nature and general scope of which [was] known to each person who is to be held responsible for its consequences.

Hampton, 660 F. 2d. 620-24. Under Hampton a conspiracy will subject to liability all of the Defendants who planned or acted in concert to deprive the Plaintiffs of their civil rights.

Defendants argue that plaintiffs' conspiracy claim should be dismissed because it contains no factual allegations to show that a conspiracy existed.

The plaintiffs have asserted in the complaint specific facts concerning the incident which, read as whole, establish and support the claim that the Defendants conspired to deprive Plaintiffs of their constitutional rights. Plaintiffs' complaint avers that a conspiracy

existed among the municipal and individual defendants to adopt and apply the Zoning Ordinances, policies, practices and customs in such an arbitrary and capricious manner as to ultimately result in the Plaintiffs being denied their right to due process.

The law recognizes that a cause of action for a section 1985 conspiracy can be made against a municipality and the officials who personally participated in the conspiracy, where an official custom or policy resulted in a constitutional violation. Frazier v. City of Philadelphia, 927 F.Supp. 881 (E.D.Pa. 1996); Owens v. Haas, 601 F.2d 1242 (1979).

These averments are sufficient to withstand a motion brought pursuant to Fed.R.Civ.P 12(b)(6). Furthermore, Leatherman v. Tarrant County Narcotics Unit, 507 U.S. 163, 122 L.Ed.2d 517, 113 S.Ct. 1160 (1993), dictates that claims brought under 42 U.S.C. § 1985 do not require a heightened pleading standard. See Weise v. Syracuse University, 522 F.2d 397, 408 (2nd Cir. 1975) ("Sketchy" conspiracy allegations are sufficient where action by the defendants collectively, in concert, and with invidious intent is alleged). Novotny v Great American Federal.Sav. & Loan Ass'n, 584 F.2d 1235 (3rd Cir. 1978) (allegations that the individual defendants "embarked upon

and pursued a course of conduct the effect of which was to deny" plaintiff's rights sets forth sufficient claims to withstand a 12(b)(6) motion); <u>Marlowe v. Fisher Body</u> 489 F.2d 1057 (6th Cir. 1973) (allegation of "collusion" is sufficient to raise claim of conspiracy). Thus, Plaintiffs conspiracy claim is sufficient set forth to withstand the instant Motion by Defendants to Dismiss.

### 3.   <u>Statute of Limitations and Ripeness</u>

Defendants assert that some of the allegations made in the complaint were brought beyond the applicable statute of limitations period. To begin with, the facts set forth in the complaint related to the attempts by the Plaintiffs to obtain the water related zoning permits were provided only to give the Court sufficient historical context in which to understand the later actions and improper motive of the Defendants.

The acts, which form the basis for the claims of denial of due process and conspiracy, date from September 30, 1998 and were ongoing thereafter. Plaintiffs' complaint was timely filed on or before September 30, 2000.

Plaintiffs' complaint was mailed priority mail to the U.S. District Court in Scranton on September 22, 2000. On

Tuesday, October 3, 2000, Plaintiff's counsel called the Clerk's office. Counsel was specifically told by the clerk, that the complaint had been timely received by the Court either just prior to or on September 30, 2000, which was the preceding Saturday. However, the clerk then apparently timestamped the complaint with the date of the call- not the date of receipt.

The complaint was seemingly again not properly processed in that on October 19, 2000, counsel called the Clerk's Office to find out why the timestamped copy of the complaint and summons had not been returned to her for service. A clerk named "Chris" thereupon advised counsel that the complaint had been temporarily misplaced but that the timestamped copy and summons would be thereafter sent to counsel, which it was.

Thus, Plaintiffs complaint was timely filed at least as of September 30, 2000 or alternatively, but for the inadvertent administrative error of the Clerk's Office, it would have been. Justice and due process would require that the Court find the complaint timely filed as of September 30, 2000.

Defendants also argue that the pig farm related claims would not be ripe until after Plaintiffs applied for a special exception. As argued fully above, it would be futile

to require Plaintiff to seek a special exception under the circumstances. Defendants indicated at September 2000 hearing that they would not consider "spot rezoning" within the Township. Plaintiffs' request for a special exception to would require "spot rezoning" and would thus, clearly be denied. Plaintiffs assert that the claims presented herein therefore are ripe for adjudication. Accordingly, Defendants Motion to Dismiss on this ground should be denied.

B.    **Plaintiffs complaint asserts cognizable claims against the individual Union Township Defendants**

1.    **Personal Involvement in the deprivation of rights**

The Eleventh Amendment does not immunize State officials for actions taken in their individual capacities or bar imposition of damages payable personally by a state official. See Scheuer v. Rhodes, 416 U.S. 232, 237-8, 40 L.Ed 2d 90, 94 S.Ct. 1683, 1687 (1974). Will v. Michigan Department of State Police, 491 U.S. 581, 105 L.Ed 2d, 109 S.Ct 2633 (1989). Further, a permissive indemnification statute does not transform a suit against a state official in his official capacity into an action against the state barred by the Eleventh Amendment. Hafer v. Melo, 502 U.S. 21, 116 L.Ed 2d 301, 112 S.Ct.358 (1991).

In order to be liable in their individual capacities, the Defendants would have to have had personal involvement in the violation of Plaintiffs rights.

"[P]ersonal involvement can be shown through allegations of personal directions..." Rode v. Dellariprete, 845 F.2d 1195, 1207 (3d. Cir. 1988). Furthermore, Candeleria v. Coughlin, 787 F. Supp. 368, 372 (S.D.N.Y. 1992) citing Williams v. Smith, 781 F.2d 319, 323 (2d Cir. 1986) holds that:

> [a] defendant may be 'personally involved' in causing constitutional deprivation if...(2) acting in a supervisory capacity, defendant (a) failed to remedy a continuing or egregious wrong after learning of a violation, (b) created a policy or custom under which the unconstitutional practices continue or (c) was grossly negligent in managing subordinates who actually caused the constitutional deprivation.

Plaintiffs have alleged that the individual Union Township Defendants personally or in a supervisory capacity had personal involvement, during the course of the various hearings and meetings, in making and implementing the policies and decisions which ultimately resulted in the violation of Plaintiffs' due process rights. Suits brought against supervisors in their individual capacities can result in a finding of personal liability. See Brandon v. Holt U.S. 464, 471, 83 L.Ed.2d 878, 105 S.Ct. 873 (1985) Kentucky v.

Graham, 473 U.S. 159, 165, 87 L.Ed.2d 114, 105 S.Ct. 3099 (1985).

Accepting all facts pleaded in the Complaint and any and all reasonable inferences that may be drawn from those facts, Defendants' Motion to Dismiss the individual Township Defendants in their individual capacities and personal capacity should be denied.

### 2.    Punitive damages

Plaintiffs acknowledge that City of Newport v. Fact Concerts, Inc., 453 U.S. 247 9181) precludes punitive damages against a Township. Plaintiffs are however seeking punitive damages against the Defendants in their individual capacities Abraham v. Pekarski, 728 F.2d 167, 467 U.S. 1242 (1984). In that Plaintiffs' claims are against the defendants in their individual capacities, there is no preclusion against punitive damages.  See Bennis v. Gable,  823  F.2d  723 (1987). Plaintiffs also properly asserted in their complaint that Defendants conduct was "motivated by evil motive or intent, or [that] it involved reckless or callous indifference to the federally protected rights of others." Smith v. Wade, 461 U.S.30, 56 (1983). Therefore, the court should permit the issue of punitive damages to go to the jury.

### 3. <u>Absolute Immunity</u>

Defendants have asserted that the Township Board of Supervisors is absolutely immune from liability. If an action undertaken by the Board or a Supervisor is an "administrative" function as opposed to a "legislative" act, the defendants are not entitled to absolute immunity. <u>Cellco Partnership v. Hess</u>, 1999 WL 178364 at 7 (E.D. Pa. Mar. 30, 1999)(in denying application for conditional use approval, borough counsel engaged in administrative rather than legislative act); <u>Northpoint Breeze Coalition v. City of Pittsburgh</u>, 431 A.2d 398 (Pa. Cmwlth. 1981); <u>Epstein v. Twp. Of Whitehall</u>, 639 F.Supp. 309, 315 (E.D. Pa. 1988).

In the case at bar, Plaintiffs have alleged various acts by the named Defendant Township Supervisors and Zoning Officers. While the passage of the amended Ordinance was a legislative act, the other acts and omissions complained of were administrative and not legislative in nature.

For example, Plaintiffs averred in their complaint that similarly situated and zoned property owners requested and routinely received from Defendants zoning permits, without the prior issuance of a building permit, in order to confirm the accepted use of their property. The granting or denial of

a zoning permit is administrative and not legislative in nature.

Furthermore, Plaintiffs averred that Defendants did not as vigorously or strictly enforce or seek enforcement of the zoning code on other similarly situated and sometimes significantly larger projects with more potential environmental impact than Plaintiffs project. This too is an administrative action.

Thus, the individual Union Township Defendants do not have absolute immunity with regard to any of the non-legislative acts, which form the basis for the Plaintiffs' complaint.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully requests the Court to deny the Union Township Defendants' Motion to Dismiss or in the alternative to grant Plaintiff leave and time to amend his complaint.

Respectfully submitted,

Teri B. Himebaugh, Esq.
PA ID 53603

## CERTIFICATE OF SERVICE

The undersigned counsel for Plaintiffs hereby certifies pursuant to 18 Pa.C.S. 4904 that a true and correct copy of the attached Plaintiffs' Response to Defendants' Motion to Dismiss has been mailed first class, postage prepaid this 22nd day of January, 2001 upon the following:

U.S. District Court
Federal Bld. Room 1060
228 Walnut Street
P.O. Box 983
Harrisburg, PA 17108-0983

James Young, Esq.
Lavery, Faherty, Young
301 Market Street #800
P.O. Box 1245
Harrisburg, PA 17108

Mr. Jonathan K. Hollin, Esq.
Powell, Trachtman, Logan, Carrle
475 Allendale Rd. Suite 200
King of Prussia, PA 19406

Teri B. Himebaugh, Esq.
220 Stallion Lane
Schwenksville, PA 19473
(610) 287-0216
PA ID 53603

# ZONING ORDINANCES

# NO. 39, 39A, 39B, 60

## AS AMENDED DECEMBER 11, 1996

# UNION TOWNSHIP

## LEBANON COUNTY, PENNSYLVANIA



PLAINTIFF'S
EXHIBIT

A

## AGRICULTURAL DISTRICT (A)

Section 402    Intent

The regulations of the Agricultural District are designed to protect and preserve the existing agricultural lands of the Township and those areas where environmental conditions are most conducive to agricultural operations which will produce high crop yields.  Principal protection and preservation emphasis is concentrated on existing farm land and conversion to non-farm usage is discouraged.  Limited residential, non-residential, and farm-related commercial uses are permitted to facilitate those individuals who may desire to locate in an agricultural setting.

402.1    Permitted Uses

The following uses are permitted, subject to the requirements listed herein and in 402.4 and 402.5 of this Ordinance:

A.    Agriculture, crop and truck farming, pasturing, truck gardening, including greenhouses, horticulture, nurseries, aviaries, hatcheries, apiaries, and similar agricultural uses.

B.    Non-intensive animal husbandry.

C.    Intensive animal husbandry, provided that:

   1.    Structures in which livestock or fowl are kept shall be no closer than three hundred (300) feet to any lot line or road right-of-way and five hundred (500) feet to any residentially zoned property.

   2.    No storage of manure or odor or dust producing substances in which livestock or fowl are kept shall be permitted within three hundred (300) feet of any lot line or road right-of-way and five hundred (500) feet from any residentially zoned property.

   3.    Feedlots

      a.    Feedlots shall be no closer than three hundred (300) feet to any adjoining lot line and no closer than five hundred (500) feet to any existing dwelling or public building, except the owners dwelling located on the same lot.

      b.    The storage of manure and odor or dust producing substances or materials shall not

be permitted within the same distances as in (a). This does not in any way prohibit the spreading of manure or commercial fertilizer on crop land or pastures.

c. No liquid runoff or contamination from the storage of animal waste shall be discharged from this property.

d. Piggeries for the feeding of garbage are specifically prohibited.

e. A minimum of 25 acres is required for a feedlot.

f. New homes constructed or placed on an adjoining lot (regardless of the zoning classification) are required to maintain these distances from an adjacent feedlot: no closer than three hundred (300) feet to any adjoining lot line and no closer than five hundred (500) feet to the feedlot.

D. Pet kennels, provided that they are located a minimum of one hundred (100) feet from any road right-of-way or lot line.

E. Public conservation areas for the preservation of open space, water, soil, forest and wildlife resources.

F. Public park and recreation areas, forest preserves, game refuges and similar non-intensive uses.

G. Golf courses and country clubs.

H. Churches, associated parish houses, and cemeteries.

I. Single family dwellings, in accordance with the requirements of Sections 402.4 and 402.5 of this Ordinance.

402.2    <u>Customary Accessory Uses</u>

Structures incidental to any of the above permitted uses, including the following:

a. Roadside stands for the sale of "home-grown" or "home-made" products when located not less than twenty (20) feet from the road cartway and not within the road right-of-way.

b. Home occupations and accessory uses, as regulated in Section 502 of this Ordinance.

-25-

DRAFT

Stan & Carol Frompovicz
7 Spruce Street
Pine Grove PA 17963

Dear Mr. & Mrs. Frompoviczz:

In response to your application for a permit to change the use of your property along the north side of Ridge Road east of the five points intersection with SR 0443, I offer the following comments;

1. Section 402.1, C intensive animal husbandry is a permitted use in the Agricultural District. The provisions for set-backs, manure, odor, dust, run-off must be complied with.
2. All additional state and federal permits including but not limited to Manure management plan, erosion and sedimentation control, and major earth disturbance must have been issued prior to the issuance of a Union Township building permit.
3. No building and/or construction activities including earth moving will be allowed before the appropriate permit or permits have been issued by the appropriate authority.
4. All provisions of Section 702.1 of the Union Township Zoning Ordinance will be required before a Union Township Building permit will be issued.
5. Before use of the proposed structures a Certificate of Use and Occupancy will be required.

NOT SENT

APP under consideration — inconf

Per sect 702.1 —

HOLD OFF TILL   Late Sept. —   OCT B.O.S.

Meeting

PER 702.1 (LAST Paragra

PLAINTIFF'S EXHIBIT
B