IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STANLEY FROMPOVICZ, JR., CAROL FROMPOVICZ, t/a FAR AWAY SPRINGS<br><br>v.<br><br>UNION TOWNSHIP,<br>UNION TOWNSHIP BOARD OF SUPERVISORS,<br>SUPERVISOR BARRY L. SWANGER<br>UNION TOWNSHIP BOARD OF SUPERVISORS,<br>SUPERVISOR KENNETH A. KINDT<br>UNION TOWNSHIP BOARD OF SUPERVISORS,<br>SUPERVISOR DAVID A. CARBAUGH<br>UNION TOWNSHIP BOARD OF SUPERVISORS,<br>ZONING OFFICER DONALD TSHUDY,<br>ZONING OFFICER WILSON JONES,<br>DAVID MILLER ASSOCIATES, INC. | **ORIGINAL**<br><br>Civil Action No. 00-1750<br><br>(William Caldwell, United States District Judge)<br><br>**FILED SCRANTON**<br>DEC 2 6 2001<br>PER _____<br>DEPUTY CLERK |

**DEFENDANT DAVID MILLER ASSOCIATES, INC.'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT PURSUANT TO F.R.C.P. Rule 56(c).**

KOP:197873v1 3445-03

I.   **Statement of the Facts and Procedural History**

**Procedural History:**

Plaintiffs Stanley F. Frompovicz, Jr., Carol Frompovicz, T/a Far Away Springs instituted a civil rights action, pursuant to 42 U.S.C. § 1983, on October 3, 2000, against Union Township; Union Township Board of Supervisors; Supervisor Barry L. Swanger, Supervisor Kenneth A. Kindt, Supervisor David A. Carbaugh, Zoning Officer Donald Tshudy, Zoning Officer Wilson Jones, (collectively "Union Township Defendants") and David Miller Associates, Inc. ("Miller Associates").

Plaintiffs complain that in September 30, 1998, Union Township denied their September 4, 1998 request to allow them to use a property they purchased in 1997 as a high intensity animal husbandry pig farm (Complaint, paragraph 17, 24). They also allege that Union Township delayed their permit applications so that they could subsequently amend the zoning ordinance to preclude pig farms (Complaint, paragraph 28). Finally they complain that at a Township Meeting in August 2000 their Applications related to the pig farm and Rezoning request related to a Sawmill were tabled to an unspecified later date, (Complaint, paragraph 31).

Miller Associates, believing that it was not a state actor for purposes of the requirement that one must have acted "under color of state law" to be the proper subject of a § 1983 claim, filed a motion to dismiss on or about January 8, 2000. The motion along with that of the Municipal Defendants was denied in part; this Court stating that for 12(b)(6) purposes, the plaintiffs sufficiently pled conspiracy between Miller Associates and the Municipal defendants, which, if factually proven, supplies the necessary element of § 1983 substantive due process liability for a private entity (Mem. Op. April 23, 2001, pg. 18). The Court did dismiss the procedural due process claim (Mem. Op.

April 23, 2001, pg. 12).

In Plaintiff's Reply Brief opposing Miller Associates' Motion to Dismiss, the plaintiffs stated:

> "At a township meeting held on August 9, 2000, Plaintiff's Application related to the Pig Farm and Sawmill Rezoning request related to the sawmill were tabled. When questioned why Plaintiff's applications were not being as expeditiously processed and granted as other business's applications were, it was specifically and publically indicated that the reason Plaintiffs were being treated differently was because Defendants, *including employees of Miller Associates*, had an acrimonious history with the Plaintiffs and held personal animosity towards them. The Frompovicz's were specifically identified."

When subsequently asked by Defendant Miller Associates' Interrogatories to identify the person or persons who "specifically and publically indicated" that the defendants had an acrimonious history with the plaintiffs and held personal animosity towards them (Defendant's Interrogatories (second set), #2), the Plaintiffs responded by providing a paraphrased dialogue between Bobby Michaels and Paul Bametzrieder that allegedly occurred at the township meeting:

> "Bobby Michaels: Why is it taking so long to get out rezoning request? Lebanon Honda got their rezoning request and changed right away. No questions asked.
>
> Paul Bametzrieder: The Honda Shop has a lot different history.
>
> Michaels: Well, we were there doing the sawmill for 30 years, and its still taking longer.
>
> Bametzrieder: Well, due to the past history of Frompovich, we are probably going to draw a crowd, so I suggest to the Supervisors that we even have this hearing on a separate night than a normal meeting night. You all remember how long those past hearings were with Frompovich - Jo Ellen you remember Greta Rank you were here. Do you really think we want to have those

|          |                                                                              |
|----------|------------------------------------------------------------------------------|
|          | long meetings again, plus all the people?                                    |
| Michaels: | Oh, just because I am associated with Frompovich its going to jeopardize our needs? |
| Bametzrieder: | Well, were not going to discuss this right now. Were talking maybe late September." |

(Plaintiffs' Response to Defendant's Interrogatories (second set), #2 ).

The content of this exchange does not "specifically and publically indicate" any acrimony, and more importantly, it *in no way implicates Miller Associates* in whatever sentiment plaintiffs have assumed from this conversation. Moreover, the alleged conversation took place almost two (2) years *after* Miller Associates ceased being the Interim Zoning Officer.

**Facts**

From February 12, 1997 to October 8, 1997, David Miller Associates was appointed as Interim Acting Zoning Officer for Union Township. From October, 1997 until July 31, 1998 Wilson Jones was the Zoning Officer for Union Township. At no time was Wilson Jones an employee of David Miller Associates. From August 1, 1998 until August 28, 1998, David Miller Associates was again appointed the Interim Zoning Officer for Union Township. That role was filled by it's employee Donald Tshudy. On August 28, 1998, Mr. Tshudy resigned from David Miller Associates and became employed directly by Union Township as it's Zoning Officer as of September 1, 1998. Thus, the relevant periods of Miller Associates acting as the Zoning Officer rather than Union Township having its own employee in the position is as follows:

| 2/12/97 - 10/8/97 | 10/9/97 - 7/31/98 | 8/1/98 - 8/28/98 | 9/1/98 - Present |
|---|---|---|---|
| Miller Associates Acting Zoning Officer | Wilson Jones employed by Union Township | Miller Associates Acting Zoning Officer | Donald Tshudy employed by Union Township |

When asked about his conspiracy allegation, Mr. Frompovicz testified as follows:

*Question:*   What is the basis, sir, for saying that David Miller/Associates was part of some conspiracy to get you and your wife?

*Answer:*   Tshudy's an employee of the firm. He was working as an employee with David Miller/Associates when this all transpired, both at the time when he reviewed the water issue and when he reviewed, you know, the pig farm issue. David Miller (sic) was the zoning officer. He was an employee of Miller.

(Dep. S. Frompovicz pg. 169).

Plaintiffs did not have any contact with *any* employee of David Miller Associates with the exception of Donald Tshudy and then, only at the times that he was acting as Zoning Officer for Union Township prior to September 1, 1998. (Dep. S. Frompovicz, Jr., pages 167-168). At no time while he was employed by David Miller Associates, did Mr. Tshudy say or do anything with respect to Plaintiffs which would leave them to believe or contend that he had personal animosity toward them. (Dep. S. Frompovicz, Jr., pgs. 212-215).

Plaintiff's Brief in Opposition to Union Township's Motion to Dismiss stated that the conduct of which they complain occurred on or after September 30, 1998. Plaintiffs had no contact

or communication with any employee of David Miller Associates in that period.

Plaintiffs' complaint is that on or about August 17, 1998 they allegedly asked Mr. Tshudy to give them written assurance that they could use their property as a pig farm and that he did not give that written assurance. (Dep. S. Frompovicz, Jr., pgs. 172, 201). Stanley Frompovicz testified that he was *not* contending that Miller Associates had anything to do with the denial of the saw mill application which is part of the claims alleged generally in the Complaint. (Dep. S. Frompovicz, page 201.)

At the August 17, 1998 meeting, Mr. Tshudy told the Plaintiffs he would take up their request with the Township Solicitor. (Complaint, paragraph 22, Dep. S. Frompovicz, pg. 192). As Mr. Tshudy said he would, he passed the Plaintiffs' request for a written assurance on to the Township Solicitor, Paul Bametzreider. Mr. Bametzreider, after researching the matter, advised Mr. Tshudy that as Acting Interim Zoning Officer, his authority was limited by the Zoning Ordinance. Further, that the Zoning Ordinance did *not* give Mr. Tshudy the power to issue advisory opinions or written assurance letters. Mr. Tshudy followed the legal advice of the Township Solicitor stating that he did not have the authority to issue a written assurance letter such as had been requested. See Affidavit of Donald Tshudy and Paul Bametzreider.

Not receiving the written assurance, on September 4, 1998, (after Mr. Tshudy left Miller Associates and became an employee of Union Township) the Plaintiffs (along with an entity called "Prime Funding, Inc.") filed a "Change of Use Permit Application" with Union Township. The Application was denied by the Union Township Zoning Officer on or about September 30, 1998. The Plaintiffs appealed the denial of their "Change of Use Permit Application" to the Union Township Zoning Hearing Board which, upheld the denial. The Plaintiffs appealed that decision to

the Lebanon County Court of Common Pleas which in a decision authored by the Honorable John C. Tylwalk on April 7, 1999 affirmed the decision of the Zoning Hearing Board. Plaintiffs had argued to Judge Tylwalk that they were being treated in a discriminatory fashion because Union Township had issued a permit to George Christianson/IC Farms but not them. Judge Tylwalk held, in his Opinion, that, unlike the Plaintiffs, IC Farms had sought and met the conditions for a building permit.

The Commonwealth Court of Pennsylvania affirmed Judge Tylwalk's April 7, 1999 decision on October 18, 1999. Before the Commonwealth Court, the Plaintiffs again argued that the Ordinance was discriminatorily applied against them and that they were treated differently from a prior applicant, George Christianson, "who allegedly submitted a virtually identical application months earlier".[1] The Commonwealth Court stated that the Plaintiffs claimed that "Christianson's

---

[1] In their complaint (paragraph 25), plaintiffs alleged that "During the same general time period, landholders within the township including but not limited to I.C. Farms/George Christiansen were given written confirmation of the accepted use of their property for high intensity pig farming without being first required to file an E&S plan, a manure plan, a development plan, etc. This confirmation of accepted use was based in part on evaluations done by DAVID MILLER/ASSOCIATES." Yet at his deposition, Stanley Frompovicz acknowledged he was referring only to one letter, to one landowner- George Christiansen as set forth below:

*Question:* This letter says, to Mr. Christianson from Mr. Jones, dated February 6, 1998, "After all of the above has been received, I will be forwarding to our township engineer for review."

*Answer:* That's right. That's right.

*Question:* Okay. Where's the guarantee here, sir?

*Answer:* The guarantee of what?

*Question:* That he was going to get it.

*Answer:* It says, "I am holding your building and zoning permit at my office."

application seeking the placement of a pig farm in the Agricultural Zoning District was not denied but, was held until certain plans and additional information was received". Commonwealth Court Opinion, Page 7. The Court noted:

> "In response, the Township contends that the Christianson application is factually distinguishable from Owner's application and has no bearing on the instant case. We agree.

> | | |
> |---|---|
> | *Question:* | Okay. That's what you read as the guarantee? |
> | *Answer:* | "I am still waiting for - - " and then the guarantee comes and says yes, it is an approved use. |
> | *Question:* | All right. So that's all you're referring to in Paragraph 25 is this Exhibit 10? |
> | *Answer:* | Well, what's the question again? |
> | *Question:* | In your complaint, Paragraph 25, I'll read it again. "During the same general time period, landowners within the township including but not limited to IC Farms/George Christianson were given written confirmation of the accepted use of their property -- " |
> | *Answer:* | Yes. |
> | *Question:* | "- - for high intensity - -" |
> | *Answer:* | That's what we're talking about. |
> | *Question:* | Okay. So Exhibit 10 is the whole kit and caboodle. Right? |
> | *Answer:* | Well, a lot of it. |
> | *Question:* | Anything else? |
> | *Answer:* | That's what we're talking about, yes. |

(Dep. S. Frompovicz pgs 199-200)

As is apparent from the face of the referenced letter, its not from Miller Associates and contains no "confirmation" as described in the Complaint.

KOP:197873v1 3445-03                              7

The comparison of Christianson's Permit Application and Owners' Permit Application clearly reveals that they were significantly different. As the Township maintains, Christianson applied in writing for a permit to construct a new structure on his property for the purpose of conducting intensive animal husbandry. *See* Christianson's Building and Zoning Permit Application; R.R.4a. Owners, however, did not request a permit to construct a building to conduct a particular use. Instead, they requested a permit only for a "Change in Use." *See* Owners' Building and Zoning Permit Application; R.R.11a. As discussed above, the Board correctly determined that no Building/Zoning Permit is needed for a change in use for that use, i.e. intensive animal husbandry, as a permitted use in the Agricultural Zoning District under Section 402.1(C) of the Ordinance.

As the Trial Court correctly noted: "Since the two (2) applications were not for the same purpose, we do not find that there was discrimination against the Frompoviczes in the Zoning Officer's application of the Zoning Ordinance."

David Miller Associates, as Township Engineer, reviews plans or drawings for Union Township *only when requested* by the appropriate township official. There is no evidence that a) David Miller Associates was at any time asked to opine upon any permit application submitted by the Plaintiffs; b) David Miller Associates ever suggested to or directed Union Township to deny any permits to Plaintiffs dealing with their pig farm applications; or c) that Miller Associates joined any type of conspiracy.[2]

On April 14, 1999, Union Township passed Ordinance No. 75 creating a special exception for intensive animal husbandry which exception allows for pig farming. On May 31, 2000 and June

---

[2] Plaintiffs allege that because Miller Associates is the Township Engineer and has been involved in the Township approval process for other landowners that it somehow is liable to Plaintiffs because the Township did not approve all of the Plaintiffs' requests. The letter from Miller Associates of which Plaintiffs make such a fuss concerning I.C. Farms was provided to Union Township, addressed to Union Township and was in response to the specific request of Union Township. See letter dated March 9, 1998 which was marked and identified as part of Exhibit 10 at the deposition of Stanley Frompovicz. Because there was no similar request by Union Township (apparently because Plaintiffs never submitted building plans to be examined) Miller Associates was never asked by Union Township to opine in any way in matters effecting the Plaintiffs.

KOP:197873v1 3445-03                             8

22, 2000, the Solicitor for Union Township wrote to Plaintiffs' counsel advising of the limited conditions necessary to get the special exception for pig farming and confirming to them that pig farming was permitted within the context of the special exception. Mr. Frompovicz testified that he received said letters copies of which were marked at his deposition as Exhibits 19 and 20. To date, the Plaintiffs *have not* filed for a special exception to operate a pig farm.[3]

Plaintiff testified that he is a "developer" who has, over the years, filed at least fifty (50) permit applications. (Dep. S. Frompovicz, Jr., page 190). Plaintiff does not really want to operate a pig farm on his property. Rather, he wishes to operate a water extraction and pumping business.

Prior to filing their Complaint in connection with this litigation, Plaintiffs had sought permission from Union Township to operate a water extraction business despite the agricultural zoning of their property. In or about February, 1998, Union Township, through Wilson Jones' Zoning Officer, refused the Plaintiffs' Permit Application in connection with their proposed water extraction operation. The Plaintiffs appealed that decision to the Union Township Zoning Hearing Board which on July 28, 1998 affirmed the Zoning Officer. The Lebanon County Court of Common Pleas held, per the Honorable John C. Tylwalk Order, in an Opinion dated January 13, 1999, that given the zoning of the property, the Plaintiffs were not permitted to operate a water extraction operation at the property. On October 6, 1999, the Commonwealth Court affirmed.

II.   **Standard of Review**

Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed "to secure the just,

---

[3] The current discovery cut-off deadline is December 31, 2001. The deadline was extended twice at the Plaintiffs' request based upon the representation that they wished to file for a special exception to use the property as a pig farm but, that it took time to get a nutrient plan.

speedy and inexpensive determination of every action." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 327, 106 S. Ct. 2548, 2555, 91 L. Ed. 2d 265, 276 (1986). The standard of review in a motion for summary judgment is whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that [the moving party] is entitled to a judgment as a matter of law. " <u>Mark v. Borough of Hatboro</u>, 51 F.3d 1137, 1141 (quoting Fed.R.Civ.P. 56(c)).

If the moving party satisfies its burden of establishing a *prima facie* case for summary judgment, the opposing party must do more than raise some metaphysical doubt as to material facts, but must show sufficient evidence to support a jury verdict in its favor. <u>Boyle v. County of Allegheny</u>, 139 F.3d 386, 393 ($^{3d}$ Cir. 1998). The nonmovant may not rely on the allegations or denials in its pleadings to establish a genuine issue of fact, but must come forward with an affirmative showing of evidence. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250, 106 S. Ct. 2505, 2511, 91 L.Ed.2d 202, (1986); and see <u>Snyder v. Flemming</u>, 102 F.Supp.2d 592, 595 (M.D.Pa. 2000).

### III. Legal Argument

**A.     All Conduct Allegedly Attributable to Miller Associates Occurred Prior to the Time Frame of Which Plaintiffs' Now Complain or is Barred by the Statute of Limitations.**

All conduct of which Plaintiffs complain in this litigation occurred on or after September 30, 1998 (see Plaintiff's Brief in Opposition to Union Township's Motion to Dismiss - Section 3 Statute of Limitations). Mr Tshudy left the employ of Miller associates and became employed directly by the Township by September 1, 1998. Plaintiffs had no contact or communication with any employee of Miller Associates on or subsequent to September 30, 1998. Thus, the alleged conduct of Miller

Associates is outside the relevant time parameters of this suit. Alternatively, all conduct by Miller Associates is outside the statute of limitations.

The Third Circuit has held that Pennsylvania's two-year statute of limitations for personal injury claim is applicable to federal civil rights claims. Sameric Corp. v. City of Philadelphia, 142 F.3d 582, 599 (3d Cir. 1998); Smith v. City of Pittsburgh, 764 F.2d 188, 194 (3d Cir. 1985); and see King v. Township of East Lampeter, 17 F.Supp.2d. 394, 409 (E.D. Pa. 1998). The Third Circuit has noted, where the conduct complained of occurred outside the two-year statute of limitations, then § 1983 claims based on that conduct are time barred. Bougher v. University of Pittsburgh, 882 F.2d 74, 78 (3d Cir. 1989); and see Urrutia v. Harrisburg County Police Dept., 91 F.3d 451, 457 (3d Cir. 1996).

Thus, because all conduct for which Plaintiffs seek to hold Miller Associates liable as Interim Township Zoning Officer, through their employment of Mr. Tshudy, occurred *prior to September 1, 1998*, all such conduct is outside the statute of limitations.

### B.  The Allegation of Conspiracy is Factually Unsupportable.

Plaintiffs have not proffered any material fact which would establish that Miller Associates and the Union Township Defendants had "an understanding, agreement, or conspiracy to deprive [the plaintiffs] of [their] rights." Snyder v. Flemming, 102 F.Supp.2d 592, 597 (M.D.Pa. 2000). There must be a genuine factual issue that the defendants "plotted, planned, or conspired together to carry out the chain of events." Id. at 598. Bare assertions, conclusory allegations, or suspicions regarding a conspiracy are insufficient to create a factual issue. Id., *citing*, Drum v. Nasuti, 648 F.Supp. 888, 897 (E.D.Pa. 1987). Such bare allegations and suspicions are Plaintiffs' only basis in their contention that a conspiracy existed between Miller Associates the various defendants.

Plaintiffs' assertion that the delay and denial of their permit application was improperly motivated rests squarely on the back of mere speculation that the defendants had an acrimonious history with the plaintiffs and held personal animosity towards them (Complaint, paragraph 31, 35). Plaintiff's assert that the August, 2000 Michaels/Bametzreider exchange reproduced above in Section I somehow represents the sentiment of all the defendants, of which Miller Associates is one. There is no evidence that supports this supposition, and said allegation cannot be factually associated with Miller Associates by virtue of its status as Tshudy's prior employer (two years earlier) or Tshudy's mere alleged presence at the meeting.

A plaintiff cannot expect to rely on bare allegations and mere suspicion. *See*, Snyder v. Flemming, 102 F.Supp.2d at 598. No *facts* have been proffered providing sufficient evidence for a jury to find the existence of a conspiracy between the Union Township Defendants and Miller Associates, and therefore no genuine issue of material fact remains with respect to the purported conspiracy and summary judgment is appropriate.

### C.    Plaintiffs Have Not Provided Sufficient Evidence to Support a Necessary Finding of State Action.

A substantive due process claim requires a plaintiff to establish (1) a property interest recognized for due process purposes (2) that was violated by an arbitrary exercise of governmental authority. See Woodwind Estates, Ltd. v. Gretkowski, 205 F.3d 118, 124 (3d Cir. 2000). In order to sustain an action pursuant to 42 U.S.C. § 1983, "[a plaintiff] must demonstrate... that the alleged deprivation was committed by a person acting under color of state law." Mark v. Borough of Hatboro, 51 F.3d at 1141, *citing*, Moore v. Tartler, 986 F.2d 682, 685 (3d Cir. 1993).

Miller Associates initially moved to dismiss this action on the grounds that it is not a state

actor and that conspiracy was not sufficiently pled. This Court found that because conspiracy was sufficiently *pled*, it would, *if proven*, provide the necessary basis for state action (Court's Order of April 23, 2001, pg. 18). However, as demonstrated in the preceding discussion, Plaintiffs have not provided the evidence necessary to support their pleading or earlier Brief. The plaintiffs are not free to continue relying on just the allegations in their pleadings. *See*, Snyder, 102 F.Supp.2d at 595.

To the extent the claims against Miller Associates are based upon their pre-September 1, 1998 employment of Mr. Tshudy, they are protected not only by the statute of limitations but the doctrine of qualified immunity. Whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the "objective legal reasonableness of the action, assessed in a light of legal rules that were "clearly established" at the time the action was taken. Qualified immunity protects public officials from 1983 civil liabilities so long as they "acted reasonably under settled law in the circumstances." (Citations omitted) Padilla v. Miller, 143 F.Supp.2d 453, 474 (M.D. Pa. 1999).

The Supreme Court has held that government officials performing discretionary functions are shielded from exposure to damages unless their conduct violated a clearly established statutory or constitutional right of which a reasonable person would have known. King v. Township of East Lampeter, 17 F.Supp.2d 394, 427 (E.D. Pa. 1998, citing Harlow v. Fitzgerald, 457 U.S. 800, 817-818, 102 S. Ct. 2727 (1982) (Zoning Officer protected by qualified immunity where Plaintiffs failed to introduce any evidence that defendant knew or should have known if he was violating the plaintiffs' rights - summary judgment granted). Qualified immunity doctrine, as applied in a civil rights context, gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law. Orsatti v. New Jersey State Police, 71 F.3d

480, 484 (3d Cir. 1995).

Here, the allegedly violative conduct of Mr. Tshudy while employed by David Miller Associates is that in or about mid August, 1998, he was allegedly asked by the Plaintiffs to supply him with a letter confirming the use of the property as acceptable for pig farming under the local zoning ordinance. Mr. Tshudy was advised by the Township Solicitor that under the zoning ordinance, *Mr. Tshudy did not have the legal power or authority to issue such a confirming letter* or advisory opinion. Accordingly, even if the conduct of Mr. Tshudy was not outside the statute of limitations with respect to the letter requested in August, 1998, he and David Miller Associates whom Plaintiffs seek to be held vicariously liable, would be protected by qualified immunity.

**D.    The Claim regarding the September 14, 1998 "Change of Use" permit barred by res judicata and collateral estoppel.**

To preclude parties from contesting matters that they have had a fair and full opportunity to litigate, protects their adversaries from the expense and vexation attending multiple law suits and conserves judicial action by minimizing the possibility of inconsistent decisions. Montana v. U.S., 99 S.Ct. 970, 973-974, 440 U.S. 147, 153-154 (1979). A fundamental precept of common-law adjudication, embodied in the related doctrines of collateral estoppel and *res judicata*, is that a "right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction... cannot be disputed in a subsequent suit between the same parties or their privies." Montana, 440 S.Ct. at 973. For a party to invoke *res judicata* in a defense to an action against it, that party must show that there has been: (1) a final judgment on the merits in a prior suit involving; (2) the same parties or their privies; and (3) a subsequent suit based on a same cause of action. Lubrizol Corp. v. Exxon Corp., 929 F.2d 960, 963 (3d Cir. (1991); Williams v. City of Allentown, 25 F.Supp. 2d

599, 602 (E.D.Pa. 1998). The denial of the September 4, 1998 Change of Use Permit Application has been fully litigated already. A Pennsylvania Appellate Court has already found that the denial was proper and that there was no unequal treatment as between the Plaintiffs and I.C. Farms. Hence, they should not here be permitted to again try and re-litigate those issues. See <u>Bailey v. Ness</u>, 733 F.2d 279, 281 (3d Cir. 1984).

### IV. Conclusion

For the foregoing reasons Defendant David Miller Associates, Inc. respectfully requests that the Court grant Summary Judgment in its favor and that the Court award such other relief as deemed appropriate.

                    POWELL, TRACHTMAN, LOGAN,
                    CARRLE, BOWMAN & LOMBARDO, P.C.

By: _____
     Jonathan K. Hollin
     Attorneys for Defendant
     475 Allendale Road-Suite 200
     King of Prussia, PA 19406
     (610) 354-9700

Dated: December 21, 2001

## CERTIFICATE OF SERVICE

I, Jonathan K. Hollin, Esquire, hereby certify that a true and correct copy of the foregoing Defendant David Miller Associates, Inc.'s Brief in Support of Motion for Summary Judgment Pursuant to F.R.C.P. Rule 56(c) was served via first class mail, postage prepaid upon the following:

Teri B. Himebaugh, Esquire
Law Offices of Teri B. Himebaugh
220 Stallion Lane
Schwenksville, PA 19473

James D. Young, Esquire
Laverty, Faherty, Young & Patterson P.C.
P.O. Box 1245
Harrisburg, PA 17108-1245

Tom Scott, Esquire
Killian & Gephart
218 Pine Street
PO Box 886
Harrisburg, PA 17108-0886

POWELL, TRACHTMAN, LOGAN,
CARRLE, BOWMAN & LOMBARDO, P.C.

By: _____
Jonathan K. Hollin
Attorneys for Defendant
475 Allendale Road, Suite 200
King of Prussia, PA 19406
610-354-9700

Dated: December 21, 2001